The judgment is reversed, and the prosecution ordered dismissed.

---

## STEVENS v. STATE.   (No. 9088.)

(Court of Criminal Appeals of Texas.   Feb. 4, 1925.)

**1. Criminal law ⬅➤730(1)—Refusal to charge that return of indictment by grand jury was no evidence of guilt, error.**

Where prosecution argued that, grand jury having heard testimony and returned indictment, it remained only for jury to do its duty, refusal to charge that. return of indictment by grand jury was no evidence of guilt, and that jury should not consider that argument, *held* error.

**2. Criminal law ⬅➤730(10) — Refusal to instruct jury to disregard argument that accused failed to explain presence at situs of alleged rape, error.**

Where prosecution argued that accused offered no explanation of what he was doing at place of alleged rape, refusal to instruct jury to disregard this *held* error; it being clearly allusion to failure of accused to testify, where it did not appear there was any witness to his presence there except prosecutrix.

**3. Criminal law ⬅➤700—State must give accused fair trial by production of all available evidence of circumstances of crime.**

In prosecution for crime so heinous as rape of child of five where conviction depends almost entirely on her testimony alone, in view of material repulsion of jury toward crime alleged, it is duty of state to bring out all the circumstances and evidence of alleged crime, or at least satisfactorily explain its absence, so that unbiased mind may be satisfied of guilt and accused may have fair trial.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Dave Stevens was convicted of rape, and he appeals. Reversed and remanded.

See, also, 97 Tex. Cr. R. 426, 261 S. W. 1045.

J. R. Stubblefield, of Eastland, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J. Appellant was convicted in the district court of Eastland county of rape, and his punishment fixed at 35 years in the penitentiary.

The prosecutrix in this case is a child five years of age; appellant, a grown and mature man. From the record we learn that appellant was on most friendly and intimate terms with the family of prosecutrix; she and her seven year old sister habitually calling him "Uncle Dave," being very fond of him, and he, apparently so, of them. On the occasion in question appellant came to the home of prosecutrix and, after making a little visit, stated that he was going somewhere in the neighborhood in his car that would take him possibly an hour, and asked the two children, prosecutrix and her sister, to go with him. The seven year old child, having some other matter, declined to go; but the little girl was eager and accompanied him. After having been gone about an hour, appellant and the little girl came back. Some time later, but during the same day, the little girl told her mother that "Uncle Dave made me pee in my breeches," and, according to the mother's testimony, detailed the occurrence at some length. The mother said she examined the child's panties and found them damp and somewhat "stiff and starchy." She said that she examined the child and found her privates red and that she complained of soreness. She and her husband took the child that same evening to Dr. Lee, who made a very careful examination and swore that he found no evidence of soreness, no abrasions, no laceration or injury of the hymen, and that the only thing he found was an abnormal separation of the lips of the vulva or exposed part of the child's privates. Dr. Lee said it was his opinion that the child's vagina had not been penetrated by any substance, but that he could not tell whether a male organ or other substance had been introduced within the lips of the vulva. Dr. Lee examined the child the next day and said that the same condition prevailed then that he discovered the night before; that is, that the lips of the child's vulva were so drawn apart as that he could lay his finger between them. He described this as abnormal, but did not give it as his opinion that it was the result of any recent injury, or that this condition could have been caused by the use of a male organ on one occasion or not.

The little girl testified as a witness. No objection seems to have been made to her testifying, upon the ground of incompetence; nor does any objection seem to have been interposed to the lengthy statement given by

---

⬅➤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the mother as having been made by the child on the afternoon of the occurrence. The child said that after she and appellant left her home, they went to the home of Mr. and Mrs. Dillon, whom she calls Uncle Jim and Aunt Meda. She said appellant left her there while he went down into a pasture, and after he had been gone a while he came back and she got in the car with him and they started to her home; she said that they got out of the car to get some cactus berries, and that appellant took her up on top of a hill and laid her on a rock and put her hat over her face so she could not see and got on top of her and "put his thing in her." Mr. Starkey testified for the state that he was constable, and that the little girl went with him the next day to show him the rock where she claimed the occurrence took place. He said this rock and place pointed out by the little girl were in a pasture northwest from the home of Mr. and Mrs. Dillon; that the home of prosecutrix was in the opposite direction from the Dillons, that is, was southeast. He said that he could find no disturbance of the ground, leaves, etc., or any tracks around the rock pointed out. Mr. and Mrs. Dillon were not used as witnesses, and nothing in the record suggests any reason for them not being called.

[1] Appellant has a large number of bills of exception. By one of them is presented objection made to the refusal of a special charge relating to the following matter. It is stated that during the argument counsel for the state said:

"A grand jury has heard the testimony of the mother and Dr. Lee, and have returned an indictment. They were satisfied, and now it remains for you to do your duty."

It is stated that counsel for appellant objected and excepted to this argument and submitted to the court a special charge instructing the jury that the fact of the return of an indictment by the grand jury was no evidence of his guilt, and telling the jury not to consider said argument, which requested instruction was refused. We think the requested charge should have been given.

[2] Bill of exceptions No. 14 sets out that in his closing argument state's counsel used the following language:

"The defendant offered no testimony except that of Starkey. The defendant offered no explanation of what the defendant was doing out there in the pasture."

A requested charge that the jury should not consider this argument was also refused. It is insisted that this was a reference to the failure of the defendant to testify. We are constrained to agree with this contention. It is evident from the record that the language used in said argument could but have had reference to the occasion of appellant and the little girl being out in the pasture, as testified to by her; or else to

what the defendant was doing after he left the little girl at the home of the Dillons, and before he came back and got her. If reference to what transpired between appellant and the little girl out in the pasture, this would be clearly in the nature of a violation of the statute forbidding allusion to the failure of defendant to testify, because there is nothing in the record to suggest the presence of any other person at the time and place indicated by the testimony of the little girl, save herself and appellant. If the language used referred to what appellant was doing out in the pasture while the little girl was at the home of the Dillons, this can be construed only as a reference to the failure of appellant to testify, for the reason there is no suggestion anywhere in the record that appellant was with any other person during his absence and before he came back to where the little girl was at the Dillon home. From either viewpoint it seems to us that the language used is violative of the injunction against discussing the appellant's failure to testify.

[3] In cases of this character great care should be exercised because of the natural feeling of repulsion on the part of jurors and other parties concerned in the trial of the case, against the character of crime here charged, and all avenues of light should be explored and all evidence possible should be adduced. In view of the statement of witness Starkey that the rock pointed out by the child was in a pasture in the opposite direction from the Dillons, to that of her home, and in view of the fact that she says the alleged rape occurred after appellant came back to the Dillons and got her and they started home, we find ourselves unable to understand how she got back in the Dillons' pasture to a point northwest from their house and not in the direction of her own home. We cannot escape the feeling that it is the duty of the state to bring before the court all the evidence obtainable, or else account for its absence in a case like this. Where were the Dillons while the little girl was at their house, and where were they when appellant came back from his visit to the pasture, and what was said and done there at the time, and which way did appellant leave with the little girl when, as she says, they started toward her home, and which way did appellant approach the Dillons' home when he came with the child? If appellant and the child got in his car and started southeast from the Dillons' home on the road which they are supposed to have come, why should not the record show some reasonable way in which he and the child could have gotten back northwest of the home of the Dillons to the point where Mr. Starkey says the child showed him a rock and said that was the place. Nor can we escape a desire to know what an impartial and capable physician would say from an examination

of the girl as to whether the abnormal condition of the lips of the vulva was such abnormality apparently peculiar to this child, or whether it could have arisen from one use of her by appellant on the day of and the day before such examination. The incarceration of a citizen of this state in the penitentiary for a period of 35 years, or for that matter for any period, is a very serious matter. This is especially so when such citizen is shown to have borne a good reputation in the community and when his conviction of the crime rests almost entirely upon the statement of as small a child as appears in this case. Appellant may be guilty, and we express no opinion in this regard; but he is entitled to a fair' trial under safeguards provided by law, and to the production of sufficient evidence to satisfy the unbiased mind that he is guilty.

For the errors mentioned, the judgment will be reversed and the cause remanded.